Good morning, your honors. My name is Robert Hoad, and I represent the plaintiff's appellants in this case. I represent Karin Ann Hoad, a 70-year-old woman who has devoted her adult life to the hands-on care and nurturing of wild and domestic animals. I also represent the School in the Clouds, ASISI, which is a California not-for-profit corporation. I also represent Escuela en las Nubes, ASISI, a Costa Rica non-profit organization. I also represent Escuela en las Nubes, ASISI, a Costa Rica non-profit association. Well, you've got a lot of clients. I'm sorry?  Well, my point is that some of them are in the United States, and some of them are in Costa Rica. And that goes to the essence of this case, which I'll get into. These plaintiff's appellants filed a complaint in the Superior Court, State of California, San Diego County. You know, we know all this. Oh, okay. Let me show you all this. This is your case. We were prolific. Well, I've got others that are more prolific, but that's all right. I'm sorry? No, we have others that are more prolific. Oh, okay. Oh, I see. I didn't just know that. Okay. But you're right in there. Okay. The thing I would emphasize, then, this circuit, the Ninth Circuit, has written a case that costs me miles, Inc. And it's a 930 case, and it's 980-fet-second, 564-566. And this is certainly the benchmark of a strong presumption against removal jurisdiction, and that's our issue here today, this jurisdiction. That case says if there is any doubt as to the right of removal in the first instance, then there can be no strong presumption. There is a strong presumption against removal jurisdiction. We would ask this court, we're here today to ask this court, to remand this case back to the United States District Court with an order to remand same back to the Superior Court of the State of California, County of San Diego. Sir, excuse me. If you could just keep the papers away from the mic a bit. I'm sorry. That's all right. Okay. As a complex case, and with the special judge, the Honorable Ronald Stein, or his successor, our problem with this is the case is one where we filed in the state court, the district court, federal district court, removed the case from the state court to the district court. The district court, we filed many citations and much law and many facts that showed that the district court, federal district court, never had jurisdiction in this case, and it should have been remanded back to the state court. All right. It wasn't, and now they've moved to correctly state that there's diversity of citizenship. So we have that motion in front of us. And then I think since you have less than five minutes, I think the federal district court also dismissed your claims under 12B-6 but permitted you to file an amended complaint, and you didn't do that. And I'm just wondering why you chose to take this on appeal rather than amending your complaint to try to state a claim. Okay. I'm sorry. I couldn't hear. The first part is we have the motion before us to amend the complaint to state diversity of citizenship as opposed to residence. That's before us. And then we have the issue of the dismissal of all your claims on the merits. I mean, in a way, I mean, my bias is you're personally I think you're better off in federal court, but so you're here. So what about these other two issues? All we're interested in getting before this court is that it be remanded back because there never was any jurisdiction in the federal court. Why don't you think there was jurisdiction? I'm sorry. Why don't you think there was jurisdiction? Because there was no complete diversity. Why not? Because there were various people who had at least minimum contacts with the state of California where the case was filed. And if not minimum contacts, maximum contacts. They were doing business. These were the families that were doing business in California. And so there couldn't have been any diversity in the case in the eyes of the federal district court there were, but there certainly weren't. Who were the people that you named in your original complaint that you say were citizens of California or doing business in California? They did business in California. Those in Humane Society of the United States and the Humane Society International and their senior executives all did business in California. So that's the basis of your for the removal issue is that your position is that because they did business in California, there was no diversity. Yes, it broke the diversity. There was no diversity of citizenship because these people were right in the state where the case was filed and where the plaintiffs resided. And they came in like the people long ago who went into the South and they came in and they sucked the money out of California. Well, everybody does that. They all come to California. Sure. No question about it. But they were there doing business, physically doing business in California. And to us, that's what diversity was all about, or lack of diversity. Well, I think your basic position then is clear. That's the basic issue as far as you're concerned. Yes. Okay. You got another minute. Do you want to save it for rebuttal? Let me just ask you a question. Where was Karen Hode living when this case was removed? She was domiciled in San Diego County. Where was she living? She also, well, she lived there. When this case was removed, where was she physically? In Costa Rica. She was in Costa Rica. She has a project in Costa Rica. Yeah, that's where she lived, in Costa Rica. She lived there part time. What? She went back and forth between Costa Rica and San Diego, California. And she was domiciled in San Diego at all times during this case. She was a domiciliary of San Diego County. And she went to Costa Rica at various times to oversee a project she had in Costa Rica. Now, that's one of the reasons we also named the other defendants, the other plaintiffs, in Costa Rica, because they were not for profits that she set up in Costa Rica.  Thank you. But she never lost her domiciliary. She maintained her domiciliary in San Diego. All right. She was always there. Okay. All right. Unless there was work to be done in Costa Rica. All right. Thank you. All right. Anything else? Thank you. Thank you. That's it? That's it. Okay. Thank you very much. Thank you. Thank you.   Thank you. Thank you. Thank you. Thank you. Good morning. My name is Kevin Warren of Harrington Fox to Rowan Cantor. And I represent the Humane Society of the United States, the Humane Society International, Wayne Paselli, Andrew Rowan, and Roger Kindler. Earlier this week, I heard Judge Pragerson say of this court, we're here to administer justice. It's our first priority. We're not here to enforce all the little things that trip people up along the way. Well, don't build your hopes on that. Well, this is a simple case that involves one of those little things. There was a defect in the notice of removal in that the individual appellees stated that they were residents of states other than California as opposed to citizens. In actuality, they were citizens of the District of Columbia or Maryland, and removal was proper based on the fact that jurisdiction or diversity of citizenship actually existed. There seems to be here a clear confusion of the standards. Do you have a motion to amend the complaint? Yes, Your Honor. Okay. We'll amend the notice of removal. The notice of removal. Okay. All right. So there appears to be a clear confusion of standards in what diversity of citizenship is. It actually – You raise a lot of money here. I'm sorry? You raise a lot of money here. We do raise a lot of money here, yes. But the diversity of the corporate defendants is not at issue. It was clearly stated in the petition that they were incorporated back east and their principal places of business were back east, and that was not challenged. It's the individual defendants whose diversity is challenged here. And those individual defendants – So where are the principal – for the Humane Society, where's the principal place of business? Washington – It's a Delaware corporation, right? Yes. And you say that you allege that the principal place of business is Washington, D.C.? Correct. All right. And what test do you use for that? That test would be – well, any of the tests. It could be the nerve center test. It could be the place where all of the business is conducted or where all of the decisions are made. That's where the headquarters is, and that's where all of the business of the corporation is. Has the Supreme Court ruled on which test to use yet? I don't believe so, Your Honor. I know there's a comment in the circuits. I don't believe so. Did they take that case, this term? I'm sorry, I didn't – Do you know whether they took Grant's cert? I don't know. But in any case, the corporate defendants aren't actually at issue in this appeal. It's the individual defendants that their diversity is challenged. And the standard that the appellants used to apply, as earlier stated, was that minimum contacts existed between the individual defendants and the State of California. But minimum contacts is clearly a doctrine that applies to personal jurisdiction and not to whether there is diversity of citizenship in Federal jurisdiction. So I would submit that there is no argument before the Court that actually challenges the diversity of citizenship of the individual defendants. Below, the district court looked at the entire record to figure out whether there was actual diversity. Specifically, they looked at the notice of removal itself, in particular paragraph 13, which stated that there was, in fact, diversity of citizenship between all plaintiffs on the one hand and all defendants on the other. In addition, defendants motioned to dismiss under 12b-2, there were declarations submitted by the individual defendants Paselli, Rowan, and Kindler that stated a number of reasons why they were not residents of California. They included the history of the places of their employment and residence, a statement that they have never resided in California, that they have never conducted business in California as individuals, they've never registered vehicles in California, never maintained bank accounts in California, never been required to pay taxes or paid taxes to the State of California, and never defended or brought a lawsuit in California. Clearly, these people have no individual contacts with the State of California. As such, diversity clearly existed. The Court examined all of these things and specifically found, in regard to appellant's motion for leave to amend and for to remand to State court, that the appellants could add additional claims if they wished, but they couldn't add additional defendants. And the Court specifically found that they could not add the additional defendants because they were specifically intended to destroy diversity, which gives us a clear indication that the District Court had found that diversity existed. In addition, the appellants did not amend their complaint when given the chance as previously pointed out by the Court. Consequently, I don't think that there is any legal basis for the appellant's contention that there was no diversity of citizenship. The Court's entitled to look at the entire record. The District Court looked at that entire record, found that there was diversity, moved forward on the claims, dismissed them based on failure to actually state a claim that the Court could grant relief for, and found that there was diversity of citizenship. Yeah. Have you ever tried to get this case settled? Yes, Your Honor. This case involves a very longstanding dispute between these parties over land and ideology and what the mission of the Humane Society should actually be. I think it's clear by the papers below that there is a great deal of animosity between the appellants and the appellees, and I just don't think that our settlement efforts ever stood any chance. Well, you know, here we have people on both sides who believe in humaneness and kindness and decency and care of animals and love of animals, and devoted their lives to that endeavor. And, you know, I would think that with those core values, that somehow you ought to be able to work this out. It's just messy. And so how long is this going to go on? Hopefully after today, no more. Well, you have litigation in Costa Rica, too, right? There is a case pending in Costa Rica, yes. And there's another one in our court. Correct. But as far as this case is concerned, I think that the – I don't know all the facts of the second case before this Court, but I believe that the allegations and the underlying facts are similar. Well, we could make a renewed effort. Sometimes the worst fights, like the 22nd Congressional District, are between people of goodwill who have the same values. Those are the worst fights. But, you know, you've got another couple of cases you tell us, and it certainly would be best for everyone if you could all work this out. But maybe when you're through here, you can all – I wouldn't suggest having a drink in this case. But I think we all hope that things will work out. Your Honor, I think that if we can possibly find a court where we can actually get our case underway, in my experience, that's when true settlement efforts and things actually occur as a case progresses and people learn more about what the other side has to say. Then maybe things can get resolved. But until we can actually get into court and get some serious allegations on the table, we can't address any of this. Well, you moved to dismiss the claims in this case, right? Correct. So if you'd wanted to let them stand, you didn't have to move to dismiss. You could have sat down and talked. Well, we attempted to. We were met with actually not even a response to meet and confer, as the Court is aware we're required to do before filing those motions. So as your client, do you have claims against the Hodes? We are not pursuing claims against the Hodes, no. And we filed those motions to dismiss basically because there weren't legal grounds to maintain the claims for no other reason. Right. They had a chance to amend the complaint to actually put claims before the Court that had a legal basis, and then they failed to do so. Well, okay. All right. Thank you very much. All right. Matter will stand submitted. Thank you. Your Honor, do I have any time left? What? Do I have any time left? I have a couple of things. Oh, sure. Come on up. We agree that there should be some talking between the parties to try to settle what has become a very complex situation. And, however, there were some misrepresentations made by my colleague as to specifically the amount of contact that the Humane Society and its officers had with California. And we have counted 19 contacts, not individual contacts, ongoing contacts with California, regardless of that they're quartered in Washington, D.C., or what have you. They've been all over California. In a year, I don't remember the exact year, they took the Humane Society took over a hundred, oh, I'm sorry, $25 million in contributions out of California and took them back to their east coast. They had heavy operations in California. They come here, they take from the California people, and particularly when there's people like Karen Hogue who have devoted their lives to animals, and maybe some of that money should have gone to them. But they actually abused the right to come into California. They insult us who are citizens of California. They come here and take the money out and take it back to their operations on the east coast. That's one of the problems in this case. Why is that an insult? We're one country. Why is that an insult? Why is it an insult? Why? Yes. Because they take the money away from the operations in California who really care for the animals in California. They take the money from them. But we don't care about animals. But people would otherwise. We don't care about animals in other parts of the country. I'm sorry? Don't we care about animals in other parts of the country? But when the Humane Society comes to California, they say the money will be used in California, and it's not. The money they collect, it's not. It's taken back to the east coast. That makes a difference. The animal people then in California don't get the use of the donations. The donations are made to the Humane Society of the United States, which is a huge operation. They have over $200 million in the bank, as we talk right now. This is a not-for-profit. And they've taken most of the money out of California. Well, that interferes with the rights of the other animal people because they're working on budgets of $10,000 a year or $5,000 a year or something like that. And that's what our plaintiffs have been involved in. But the complaint was all about defamation. The complaint was defamation. That was the actual tort. Well, not real. It seems to me what you're saying is that they're raising money representing that the money will stay in California when, in fact, they're sending it elsewhere. That sounds to me like a fraud or fraudulent misrepresentation type claim. And the only claims you raised here are defamation-related claims. But this involved the plaintiffs in California, citizens and domiciliaries of California, in Costa Rica, where the Humane Society induced the people to go down to Costa Rica. And so in going down to Costa Rica, they relied on these people going down to Costa Rica to develop animal projects. Well, they had their animal projects in California, and they had their animal projects in Costa Rica. But these were not rich people. And so they went down there, and they needed all these monies to stay in California instead of the carpetbaggers coming to California and taking the money out, the Humane Society, the carpetbaggers. They took the money out. Now, how that applies to this case is that the Humane Society asked all these defendants to be in business in Costa Rica. I mean, all the plaintiffs to be in business in Costa Rica. They came to California to induce them to go to Costa Rica. And they had all these visions of what they were going to do for these plaintiffs in Costa Rica. And then they disappeared. I mean, it's just a ridiculous situation. Well, we understand your views. Yeah, the problem really is this isn't the place to resolve. Courts are not the place to resolve that kind of problem. No, I understand that. But we're talking about also jurisdiction. Yeah, well, that's the issue, the legal issue that we have. And we understand the issue in your position. Thank you. That's fine. Thank you very much.
judges: Pregerson, Reinhardt, Wardlaw